863 So.2d 201 (2003)
Naji NEHME, etc., Petitioner,
v.
SMITHKLINE BEECHAM CLINICAL LABORATORIES, INC., etc., et al., Respondents.
No. SC02-1680.
Supreme Court of Florida.
September 25, 2003.
*202 Earl Denney of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, FL; and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for Petitioner.
Mercer K. Clarke and Spencer T. Kuvin of Clarke, Silvergate, Williams & Montgomery, Miami, FL; Andrew T. Bayman of King & Spalding, Atlanta, Georgia; Jennings L. Hurt, III, John P. Daly, and Karissa O. McAloon of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, Florida; and Arthur J. England, Jr. And Julissa Rodriguez of Greenberg Traurig, P.A., Miami, FL, for Respondents.
Gail Leverett Parenti of Parenti, Falk, Waas, Hernandez & Falk, Coral Gables, Florida, and Hal B. Anderson of Billing, Cochran, Heath, Lyles & Mauro, P.A., *203 Fort Lauderdale, FL, for Florida Defense Lawyers Association, Amicus Curiae.
CANTERO, J.
In this case, we must interpret a statute of repose applicable to medical malpractice cases. Section 95.11(4)(b), Florida Statutes (1993), extends the normal four-year statute of repose for such actions to seven years when "fraud, concealment, or intentional misrepresentation of fact" prevents discovery of the injury. The Fifth District Court of Appeal has certified the following question of great public importance:
DOES THE TERM CONCEALMENT AS USED IN SECTION 95.11(4)(b), FLORIDA STATUTES, ENCOMPASS NEGLIGENT DIAGNOSIS BY A MEDICAL PROVIDER?
Nehme v. Smithkline Beecham Clinical Labs., Inc., 822 So.2d 519, 522 (Fla. 5th DCA 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the question in the negative and approve the decision of the Fifth District Court of Appeal.

I.
On May 23, 1994, thirty-year-old Rhonda Nehme had a gynecological examination and pap smear at the Volusia County Public Health Department. The slide of the pap smear was delivered to Smithkline Beecham Clinical Laboratories, Inc. Smithkline then sent the slide to Shutze & Techman, P.A., the predecessor corporation of Premiere Medical Laboratories, P.A., for interpretation. In a June 1994 report, a cytotechnologist at Shutze & Techman interpreted the slide as "normal" and "within normal limits." Because the slide was interpreted as normal, no other cytologist or pathologist reviewed it, nor was the slide chosen for a random oversight review. Later expert testimony revealed that the interpretation was "egregious" and that the cytopathological evidence of malignancy was as "big as a house." Mrs. Nehme was diagnosed with cervical cancer in February 1997, of which she died in December 1997.
In September 1999, over five years after the pap smear report, petitioner Naji Nehme filed a medical malpractice and wrongful death complaint alleging that the cytotechnologist had misinterpreted the pap smear and that a proper interpretation would have revealed the existence of the malignancy. The petitioner sought damages on behalf of the estate, himself, and the Nehmes' six minor children. The respondents Smithkline, Premier, and Dr. Shutze moved for summary judgment, arguing that the case was barred by the four-year statute of repose as set forth in section 95.11(4)(b), Florida Statutes, which requires that any medical malpractice action be commenced no later than four years from the date of the incident or occurrence. The trial court granted summary judgment in favor of the respondents.
On appeal, the petitioner argued that the statute of repose should be extended to the full seven years allowed by section 95.11(4)(b) in cases of fraud, concealment, or intentional misrepresentation of fact. The Fifth District disagreed and affirmed in accordance with Myklejord v. Morris, 766 So.2d 1160 (Fla. 5th DCA 2000) (plurality opinion), review denied, 789 So.2d 347 (Fla.2001). Nehme, 822 So.2d at 522. The Fifth District noted, however, that Myklejord is not binding precedent because only one of the judges on the panel concurred in its reasoning. Nehme, 822 So.2d at 521-22. The Fifth District also recognized that both the plurality and the dissent in Myklejord relied on Nardone v. Reynolds, 333 So.2d 25 (Fla.1976). Therefore, because the "language in Nardone can be read to support a conclusion either *204 way, as evidenced by Myklejord," the Fifth District certified the question of great public importance. Nehme, 822 So.2d at 522.

II.
At issue is whether the term "concealment" as used in section 95.11(4)(b), Florida Statutes, encompasses negligent diagnosis by a medical provider. As an initial matter, however, the parties disagree as to whether the pre-1996 or post-1996 version of section 95.11(4)(b) applies in this case. The petitioner relies on the post-1996 version of the statute, while the respondents argue the pre-1996 version should apply. The Fifth District relied on the post-1996 version. See Nehme, 822 So.2d at 521 (citing § 95.11(4)(b), Fla. Stat (2000)). The pre-1996 version of the statute provides:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.
§ 95.11(4)(b), Fla. Stat. (1993) (emphasis added). The post-1996 version does not contain the above-underlined phrase. See § 95.11(4)(b), Fla. Stat. (Supp.1996). The law that enacted the amendment in 1996 provided: "this act shall take effect July 1, 1996, and shall not apply to causes of action arising from acts, events, or occurrences that take place before that date." Ch. 96-167, § 2, Laws of Fla. The "act, event, or occurrence" which the cause of action arose out of in this case was the alleged negligent diagnosis of Mrs. Nehme's pap smear slide in 1994. Therefore, the pre-1996 version of section 95.11(4)(b) applies.
As quoted above, section 95.11(4)(b), Florida Statutes (1993), extends the normal four-year statute of repose in a medical malpractice action to seven years in cases of "fraud, concealment, or intentional misrepresentation of fact." The statute does not define "concealment," and the parties disagree about its meaning. The petitioner contends that the term "concealment" does not require knowledge, while the respondents argue that it does.
"Because the statute does not define the term [concealment], the Court must resort to canons of statutory construction in order to derive the proper meaning." Seagrave v. State, 802 So.2d 281, 286 (Fla.2001). "One of the most fundamental tenets of statutory construction requires that we give statutory language its plain and ordinary meaning, unless words are defined in the statute or by *205 the clear intent of the legislature." Green v. State, 604 So.2d 471, 473 (Fla.1992). "When necessary, the plain and ordinary meaning of words can be ascertained by reference to a dictionary." Seagrave, 802 So.2d at 286; see also L.B. v. State, 700 So.2d 370, 372 (Fla.1997) (stating that "a court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term").
To extend the repose period, the statute requires that "concealment" prevent "the discovery of the injury." "Conceal" is defined as (1) to prevent disclosure or recognition of; and (2) to place out of sight. Merriam Webster's Collegiate Dictionary 238 (10th ed.1994). More specifically, "concealment" is defined as (1) the act of refraining from disclosure; esp. an act by which one prevents or hinders the discovery of something; and (2) the act of removing from sight or notice; hiding. Black's Law Dictionary 282 (7th ed.1999). Under these definitions, concealment connotes knowledge.
Other tools of statutory construction also lead us to conclude that concealment implies knowledge. Under the doctrine of noscitur a sociis (a word is known by the company it keeps), one examines the other words used within a string of concepts to derive the legislature's overall intent. See Cepcot Corp. v. Dept. of Bus. & Prof'l Reg., 658 So.2d 1092, 1095 (Fla. 2d DCA 1995); Carraway v. Armour & Co., 156 So.2d 494 (Fla.1963). Here, the string of concepts in the statute is "fraud, concealment, or intentional misrepresentation of fact." "Fraud" is generally defined as (1) a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment; and (2) a misrepresentation made recklessly without belief in its truth to induce another person to act. Black's Law Dictionary 670 (7th ed.1999). "Intentional misrepresentation of fact" is the intentional (done with the aim of carrying out the act) act of making a false or misleading statement about something. Id. at 814, 1016. Applying the doctrine of noscitur a sociis, because both "fraud" and "intentional misrepresentation of fact" involve a level of knowledge or intent, we conclude that the legislative intent was to extend the repose period when intentional acts prevent discovery of the injury. A negligent diagnosis, without more, does not constitute concealment. Here, no evidence suggested that the respondents knew the 1994 slide reading was erroneous.

III.
Although the Fifth District did not discuss statutory construction, it reached the same conclusion. The Fifth District followed Myklejord, 766 So.2d at 1160, a plurality opinion from that district that considered the same issue. In Myklejord, the appellant's cancer was not detected by the appellee health care providers. The appellant claimed the health care providers were negligent in failing to diagnose the cancer. Appellant's claim was filed more than six years after the alleged negligent act occurred. Judge Pleus found:
The complaint does not set forth any facts which would establish a basis to extend the statute of repose beyond four years.
"Concealment" required to extend the statute of repose in medical malpractice matters to seven years requires fraud, intent to conceal or some other active element. Nardone v. Reynolds, 333 So.2d 25 (Fla.1976). See also Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978). Concealment also requires knowledge (by the tortfeasor) about plaintiff's condition which is not conveyed to plaintiff. Nardone, 333 So.2d *206 at 37. In such instances, the plaintiff is being actively misled about his or her true condition by the tortfeasor. Conceptually, this intentional withholding of information acts to delay plaintiff's ability to discover the tortfeasor's wrongdoing or the nature of the injury itself.
We find no rational basis for making negligent diagnosis subject to a seven-year repose period where other acts of simple negligence are governed by a four-year period.
Myklejord, 766 So.2d at 1162. Judge Sawaya concurred in result only, and Judge Dauksch dissented. Judge Dauksch also relied on Nardone but came to the opposite conclusion:
It is clear that the Florida Supreme Court [in Nardone ] intends that a duty is to be imposed on a physician when an adverse condition (malignant cells on a slide for example) is either known to the doctor or is readily available to him/her through "efficient diagnosis." It is undisputed that the diagnosis here by Morris was inefficient. See also Mangoni v. Temkin, 679 So.2d 1286 (Fla. 4th DCA), rev. dismissed, 686 So.2d 582 (Fla.1996), in which the court held that the act giving rise to the negligence action may also be the act which gives rise to the fraudulent concealment action which would extend the Statute of Repose to up to seven years.
Myklejord, 766 So.2d at 1163 (Dauksch, J., dissenting). Thus, the dissent would have answered the issue in the affirmative to "say that a negligent mis-diagnosis or failure to diagnose can constitute concealment as contemplated by the statute." Id.
Both the plurality and the dissent in Myklejord relied on Nardone. In Nardone, a boy had several brain operations and other procedures in early 1965. By the time he was discharged in July of that year, he was blind and comatose and had suffered irreversible brain damage. His parents filed a malpractice action in May of 1971. The medical providers argued the suit was untimely because it was not filed within the four-year limitations period. The Fifth Circuit Court of Appeals certified four questions to this Court, and we concluded in part:
After careful analysis of the variant views of other jurisdictions in this country and previous views espoused by this Court and other Florida Appellate Courts, we hold that, although generally the fraud must be of such a nature as to constitute active concealment to prevent inquiry or elude investigation or to mislead a person who could claim a cause of action, we do recognize the fiduciary, confidential relationship of physician-patient imposing on the physician a duty to disclose; but, this is a duty to disclose known facts and not conjecture and speculation as to possibilities. The necessary predicate of this duty is knowledge of the fact of the wrong done to the patient.

Nardone, 333 So.2d at 39 (emphasis added). The respondents rely on this language to support their position. The petitioner, on the other hand, relies on language immediately following this passage, as well as our conclusion near the end of the opinion:
Where an adverse condition is known to the doctor or readily available to him through efficient diagnosis, he has a duty to disclose and his failure to do so amounts to a fraudulent withholding of the facts, sufficient to toll the running of the statute. But, where the symptoms or the condition are such that the doctor in the exercise of reasonable diligence cannot reach a judgment as to the exact cause of the injury or condition and merely can conjecture over the possible or likely causes, he is under no commanding *207 duty to disclose a conjecture of which he is not sure. Therefore, his silence as to a possible condition or cause which he is unable to verify in the exercise of reasonable diligence does not standing alone constitute sufficient fraudulent withholding to toll the statute of limitations.
....
... As above explained and pursuant to the peculiar facts of this case above described, the third question[1] is answered in the negative. Although the confidential and fiduciary nature of the doctor-patient relationship does impose a duty on the physician to disclose known causes (or causes that should be known through exercise of reasonable care and due diligence) readily available to him through efficient diagnosis and failure to do so constitutes sufficient concealment to toll the statute, there is no concomitant duty imposed on the physician to relate all merely possible or likely causes of the injury.
Id. at 39-40 (emphasis added).
We note two points about Nardone. First, Nardone did not interpret the language in section 95.11(4)(b). That language was not included until 1975. See ch. 75-9 § 7, Laws of Fla. Instead, Nardone discussed and interpreted the Florida doctrine of tolling limitations by fraudulent concealment. Therefore, Nardone is not precisely on point. Second, the language from Nardone on which the petitioner relies can be reconciled with Nardone's holding and the language on which respondents rely. Nardone holds that a doctor has a duty to disclose an adverse condition that is known or is readily available through efficient diagnosis. This "efficient diagnosis" language is predicated on the doctor's "knowledge of the fact of the wrong done to the patient." Nardone, 333 So.2d at 39 (emphasis added). Here, the respondents had no knowledge of the fact of the wrong done to the patient. Cf. Mangoni v. Temkin, 679 So.2d 1286, 1288 (Fla. 4th DCA 1996) (finding that where doctors knew of an adverse condition but failed to disclose its existence to the claimant, the doctors' silence may have effectively concealed their own neglect of a medical condition that demanded attention). One cannot conceal what one does not know.

IV.
At least one Florida court has interpreted the term "concealment" as used in the statute differently. In Hernandez v. Amisub, 714 So.2d 539 (Fla. 3d DCA 1998), the plaintiff alleged that a hospital was negligent in leaving a pad inside his body following surgery, and that the hospital had misrepresented material facts concerning the pad count. Upon remand and the close of the plaintiff's case, the hospital moved for a directed verdict, asserting that the plaintiff had proved neither concealment nor intentional misrepresentation, which precluded the seven-year statute of repose. The trial court granted the hospital's motion. Id. at 541. On appeal, the Third District reversed:

*208 Notwithstanding the hospital's assertion to the contrary, there was no need for Hernandez to prove that the Hospital or its employees had actual knowledge that a pad had been left inside Hernandez' abdomen, in order for Hernandez' claim to succeed. There is no indication in section 95.11(4)(b) that the term "concealment" includes a scienter element. The term "conceal" does not necessarily infer intent or deliberation. Indeed, given the facts here, it is quite unlikelyeven unthinkablethat anyone would intentionally or deliberately "conceal" a foreign object in a patient's body. Moreover, even under an "intentional misrepresentation" claim, the misrepresentation need not be deliberate. Misrepresentation may also be shown by carelessness or recklessness as to the truth of the matter asserted. See Ocean Bank of Miami v. Inv-Uni Investment Corp., 599 So.2d 694 (Fla. 3d DCA 1992).
We believe that Hernandez proved "concealment" or, alternatively, "intentional misrepresentation of fact" here. The specific misrepresentation was the Hospital's report that it had performed an accurate count of lap pads at the conclusion of Hernandez' operation when it had not. Not only was the count not properly performed, as evidenced by the pad left inside Hernandez' body, but the Hospital demonstrated reckless disregard for the truth by its false report indicating that the count had been properly performed.
Hernandez, 714 So.2d at 541-42 (footnotes omitted). The Third District concluded that "[b]ecause [the plaintiff] produced sufficient evidence to show that the Hospital concealed evidence or intentionally misrepresented facts, [the plaintiff] was brought within the extended seven-year statutory period of repose in section 95.11(4)(b)." Hernandez, 714 So.2d at 542.
The Third District defined "conceal" as "to hide or withdraw from observation; to withhold knowledge of." Although this definition requires that the person concealing the information know about the information withheld, the Third District stated that "there was no need for Hernandez to prove that the Hospital or its employees had actual knowledge that a pad had been left inside Hernandez's abdomen, in order for Hernandez's claim to succeed." Hernandez, 714 So.2d at 541. We find that Hernandez read the definition of the term "concealment" too broadly and thus erred in reasoning that no knowledge is required to prove concealment under section 95.11(4)(b).[2]

V.
Finally, we recognize that the medical malpractice statute of repose may, in some cases, extinguish a cause of action before a claimant discovers it. The very purpose of a statute of repose is to extinguish valid causes of action, sometimes before they even accrue. See Kush v. Lloyd, 616 So.2d 415, 421 (Fla.1993) (stating that a statute of repose "eliminate[s] a cause of action before it has accrued"). "In contrast to a statute of limitations, a statute of repose precludes a right of action after a specified time which is measured from the incident of malpractice ... rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued." University of Miami v. Bogorff, 583 So.2d 1000, 1003 (Fla.1991). Although, as in this case, a statute of repose may cause injustice by *209 eliminating a valid cause of action, statutes of repose address a countervailing concernthat is, the difficulty in defending against a lawsuit many years after the conduct at issue occurred. As time passes, memories fade, documents are destroyed or lost, and witnesses disappear. See Kush, 616 So.2d at 421-22 ("In creating a statute of repose which was longer than the two-year statute of limitation, the legislature attempted to balance the rights of injured persons against the exposure of health care providers to liability for endless periods of time."). We have upheld section 95.11(4)(b) as constitutional, finding that the statutory repose period for medical malpractice actions does not violate the constitutional requirement of access to courts,[3] even when applied to a cause of action which did not accrue until after the period had expired. Carr v. Broward County, 541 So.2d 92, 95 (Fla.1989); see also Pullum v. Cincinnati, Inc., 476 So.2d 657, 659-60 (Fla.1985) (recognizing that statutes of repose are a valid legislative means to restrict or limit causes of action in order to achieve certain public interests), appeal dismissed, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986).

VI.
For the reasons stated, we answer the certified question in the negative and hold that the term "concealment" as used in section 95.11(4)(b), Florida Statutes, does not encompass negligent diagnosis by a medical provider.[4] The decision of the district court of appeal is approved.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, QUINCE, and BELL, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion, in which PARIENTE, J., concurs.
LEWIS, J., recused.
ANSTEAD, C.J., specially concurring.
While I concur in the majority opinion because its reasoning appears sound, I do so with some concern about the fundamental fairness and lack of civil "due process" that appears to accompany our holding. The majority opinion refers to evidence that the misinterpretation of the pap smear slide was "egregious" because the malignancy was as "big as a house." Nevertheless, the deceased was told that the slide was "normal" and she, of course, had no reason to know that report was false, and that the opposite was true. Taken to its natural conclusion our holding means that an innocent person who suffers devastating consequences through an egregious mistake by a medical provider may lose her entitlement to civil justice even before she becomes aware that a wrong was committed. That is precisely the effect of the Legislature's enactment of the statute of repose we construe today, and it is important that this effect be known.
Limitation periods are usually predicated upon the concept that people should not be allowed to sleep upon their rights and that society needs to get on with its business without the indefinite fear of legal action. But a key ingredient in that concept is that people have notice that they have been harmed by the wrong of another. *210 Indeed, it appears by the provision we interpret today that the Legislature wanted to be sure that the information as to mistake or injury was not withheld from a victim by the offender so as to prevent the victim from knowing what had happened to her. However, under the statutory scheme we construe today, it matters not that the innocent victim had no notice or that the misinterpretation was egregious. The arguably short period of time provided under this statute of repose simply ran out six months after the victim died.
PARIENTE, J., concurs.
NOTES
[1] That question was:

Under the Florida doctrine of tolling limitations by fraudulent concealment, where there is knowledge by the parents of the incompetent minor of the physical-mental condition but not the cause as set forth in I above, does non-disclosure by one or more of the alleged malpractitioners of possible causes of the such [sic] condition unaccompanied by misrepresentation toll the statute:
(a) as to all of the alleged malpractitioners?
(b) as to individual alleged malpractitioners who did not participate in the asserted `concealment'?
Nardone, 333 So.2d at 27-28. Nardone answered this question in the negative.
[2] We state no opinion about whether the facts in Hernandez proved either fraud or intentional misrepresentation of fact.
[3] Art. I, § 21, Fla. Const.
[4] Respondents also argue that the "concealment exception" to the statute of repose period is not even applicable in this case because the petitioner believed, well within the four-year repose period, that a "doctor or somebody did something wrong." Neither the trial court nor the district court addressed this issue and, given our resolution of the certified question, we also decline to address it.