965 So.2d 255 (2007)
John TODD and Katina Todd, his wife, Appellants,
v.
Marvin JOHNSON, M.D., Appellee.
No. 1D06-6135.
District Court of Appeal of Florida, First District.
September 14, 2007.
*256 Steve A. Rothenburg, Ocala and Jeffrey L. Meldon of Jeffrey Meldon & Associates, P.A., Gainesville, for Appellants.
Marynelle Hardee, Gainesville, D. Andrew Vloedman, Gainesville, and John E. Maines, IV, Lake Butler, for Appellee.
BENTON, J.
John and Katina Todd appeal the final judgment dismissing their second amended complaint, which alleges medical malpractice on the part of Marvin Johnson, M.D. The trial court granted Dr. Johnson's motion to dismiss the complaint on grounds the complaint was time barred, because it failed "to allege facts constituting fraud, concealment or intentional misrepresentation which prevented the Plaintiff[s] from discovering injury which would extend the statute of limitations [sic] beyond four years." See § 95.11(4)(b), Fla. Stat. (2004).[1] We reverse.
"Whether a complaint should be dismissed is a question of law." City of Gainesville v. State, Dep't of Transp., 778 So.2d 519, 522 (Fla. 1st DCA 2001). "As the factual foundation for its ruling on a *257 motion to dismiss a complaint . . ., a court may consider only the factual allegations set forth in the complaint, must accept those allegations as true, and must resolve in the plaintiff's favor all inferences that might be drawn from those allegations." Mosby v. Harrell, 909 So.2d 323, 326 (Fla. 1st DCA 2005). "The propriety of the trial court's dismissal is a pure question of law as to which our standard of review is de novo." Sumner v. Gros, 958 So.2d 1038, 1039 (Fla. 1st DCA 2007). See also Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd., 752 So.2d 582, 584 (Fla.2000) ("A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review."); Rudloe v. Karl, 899 So.2d 1161, 1162 (Fla. 1st DCA 2005). On appeal, "[o]ur review must also treat all well-pleaded allegations as true, and limit itself to the four corners of the complaint." Sumner, 958 So.2d at 1039; see also Gowan v. Bay County, 744 So.2d 1136, 1138 (Fla. 1st DCA 1999).
The second amended complaintthe complaint at issue herealleged that, when Mr. Todd applied for social security disability benefits, he was "instructed" in the course of ascertaining his eligibility for benefits to go to Gainesville Radiology Group for a chest x-ray on October 4, 2000; was furnished written notice that his evaluation would not include any medical care; and signed a form authorizing the release of x-ray results to Dr. Johnson, whom he identified as his physician.[2]
When an x-ray revealed a two-centimeter mass in Mr. Todd's lung "suspicious for malignancy," the complaint alleged, a radiologist called Dr. Johnson's office. According to the complaint, a notation in Mr. Todd's medical record at Dr. Johnson's office reads: "Dr. Johnson, Dr. Alderman from N.F. Radiology wants you to call her concerning John C. Todd." Below this, in different handwriting, allegedly appears: "Order x-ray that showed mass in lung." But, the complaint alleges, Dr. Johnson did not at that time contact Mr. Todd or let him know what the x-ray depicted; and Mr. Todd remained unaware of the x-ray findings for approximately three and a half years as a result. Only on or about July 23, 2004, according to the complaint, when Mr. Todd came to him for treatment for a persistent cough, did Dr. Johnson inform him that the chest x-ray taken October 4, 2000, revealed a mass on the lung. The complaint further alleges that a subsequent biopsy of the lung tumor conclusively established that it was malignant, and that the cancer was then at stage four.[3]
*258 The Todds filed their original complaint on January 17, 2006,[4] within two years of learning of Dr. Johnson's original failure to apprise them of the portentous x-ray, but more than four (and less than seven) years after Dr. Johnson had, they alleged, learned (or should be deemed to have known) of the x-ray himself. The complaint alleged injury on the theory that Dr. Johnson concealed a medical condition that required immediate attention, and deteriorated for want of treatment. The Todds argued below, as they argue here, that Dr. Johnson's failure to tell them about the x-ray amounted not only to actionable malpractice, but also to "concealment" that tolled the limitations period and extended the repose period.[5]See Mangoni v. Temkin, 679 So.2d 1286, 1287 (Fla. 4th DCA 1996) (holding that nondisclosure may both be actionable itself and operate to "extend the statute of repose").
Whether the filing was timely turns on whether "it can be shown [or, at this stage *259 of the proceedings, has been adequately pleaded] that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury." § 95.11(4)(b), Fla. Stat. (2004). The Todds alleged concealment, but the trial court dismissed the complaint, ruling that it failed to allege sufficient facts to constitute "concealment," within the meaning of section 95.11(4)(b), Florida Statutes (2004). In doing so, the trial court purportedly relied on the authority of Nehme v. Smithkline Beecham Clinical Labs., 863 So.2d 201, 203 (Fla. 2003),[6] even though Nehme can be read as holding merely that the statutory term "concealment" does not "encompass negligent diagnosis by a medical provider." Id. at 209.
There are, to be sure, similarities between the facts in the present case and the facts of the Nehme case, which the supreme court set out in some detail, as follows:
On May 23, 1994, thirty-year-old Rhonda Nehme had a gynecological examination and pap smear at the Volusia County Public Health Department. The slide of the pap smear was delivered to Smithkline Beecham Clinical Laboratories, Inc. Smithkline then sent the slide to Shutze & Techman, P.A., the predecessor corporation of Premiere Medical Laboratories, P.A., for interpretation. In a June 1994 report, a cytotechnologist at Shutze & Techman interpreted the slide as "normal" and "within normal *260 limits." Because the slide was interpreted as normal, no other cytologist or pathologist reviewed it, nor was the slide chosen for a random oversight review. Later expert testimony revealed that the interpretation was "egregious" and that the cytopathological evidence of malignancy was as "big as a house." Mrs. Nehme was diagnosed with cervical cancer in February 1997, of which she died in December 1997.
In September 1999, over five years after the pap smear report, petitioner Naji Nehme filed a medical malpractice and wrongful death complaint alleging that the cytotechnologist had misinterpreted the pap smear and that a proper interpretation would have revealed the existence of the malignancy. The petitioner sought damages on behalf of the estate, himself, and the Nehmes' six minor children. The respondents Smithkline, Premier, and Dr. Shutze moved for summary judgment, arguing that the case was barred by the four-year statute of repose as set forth in section 95.11(4)(b), Florida Statutes, which requires that any medical malpractice action be commenced no later than four years from the date of the incident or occurrence. The trial court granted summary judgment in favor of the respondents.
Id. at 203. Here, as in Nehme, the act giving rise to the negligence action is the act (nondisclosure) on which the plaintiffs rely to extend the period of repose.
The Todds' complaint does not, however, allege ignorance of the kind that afflicted the medical providers in the Nehme case, where none of them initially understood the significance of Mrs. Nehme's Pap smear. This lack of understanding was central to the analysis: The Nehme opinion teaches that there can be no concealment within the meaning of the statute without knowledge on the tortfeasor's part of what is being concealed. The supreme court found this inherent in the word "concealment," and cited dictionary definitions that support this view:
To extend the repose period, the statute requires that "concealment" prevent "the discovery of the injury." "Conceal" is defined as (1) to prevent disclosure or recognition of; and (2) to place out of sight. Merriam Webster's Collegiate Dictionary 238 (10th ed.1994). More specifically, "concealment" is defined as (1) the act of refraining from disclosure; esp. an act by which one prevents or hinders the discovery of something; and (2) the act of removing from sight or notice; hiding. Black's Law Dictionary 282 (7th ed.1999). Under these definitions, concealment connotes knowledge.
Id. at 205 (emphasis added). The Nehme court discussed Nardone v. Reynolds, 333 So.2d 25 (Fla.1976), superseded by statute, Ch. 75-9, § 7, at 20-21, Laws of Fla. See Nehme, 863 So.2d at 207 ("Nardone holds that a doctor has a duty to disclose an adverse condition that is known or is readily available through efficient diagnosis."). The Nehme court distinguished Nardone on grounds Nardone was based on a prior version of the statute, saying that, while Nardone's "`efficient diagnosis' language is predicated on the doctor's `knowledge of the fact of the wrong done to the patient,'" id., the statute's subsequent amendment required fuller knowledge and a different analysis[7] because "[o]ne cannot conceal what one does not know." Id.
*261 Here appellants do not allege that Dr. Johnson concealed what he did not know. The complaint alleges that "he concealed the fact that Mr. Todd's chest x-ray showed a malignant two centimeter mass on October 4, 2000," not that he was unaware of the malignancy or its significance. There was no finding in Nehme (which was decided on motion for summary judgment) that the medical providers who had examined Mrs. Nehme's slides realized they showed that she was dying, but did not bother to tell her. The Nehme court's teaching that "negligent diagnosis, without more, does not constitute concealment," id. at 205, is inapposite in the present case, where no misdiagnosis (nor any "negligent diagnosis") is alleged.
The Todds' theory is that Dr. Johnson was under a duty to share vitally important information with Mr. Todd, just as the surgeon (and others) in Bryant v. Adventist Health Sys. Sunbelt, Inc., 869 So.2d 681, 682-83 (Fla. 5th DCA 2004), were alleged to have been under a duty to make operative notes documenting (and so disclosing) surgical complications. The Todds' complaint alleges that "[o]n or about October 4, 2000[,] and every[ ]day thereafter until July 23, 2004, Dr. Marvin Johnson concealed from Mr. Todd the fact that Mr. Todd had been diagnosed with a 2 cm mass in his lung that was suspicious for malignancy." If the Todds can prove these allegations, the statutory repose period is extended. See Vause v. Bay Med. Ctr., 687 So.2d 258, 261 (Fla. 1st DCA 1996) (en banc) ("Even a relatively straightforward affirmative defense, such as one based upon the statute of [repose], is not a basis for dismissal unless the complaint affirmatively and clearly shows the conclusive applicability of the defense.").
Dr. Johnson also argues, invoking the "tipsy coachman rule," that the judgment should be affirmed because a physician-patient relationship was not adequately alleged. See, e.g., Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). The complaint alleges that Mr. Todd had no other doctor from January of 2000 onward, and considered Dr. Johnson his only physician during that period. The complaint did not allege that Dr. Johnson advised either the radiologist or Mr. Todd himself that he did not consider Mr. Todd his patient. The complaint does allege that Mr. Todd informed the social security evaluators that Dr. Johnson was his physician and that notes in Dr. Johnson's file about the call from the radiologist implied that people in Dr. Johnson's office, if not Dr. Johnson himself, viewed Mr. Todd as a patient. The complaint does not fail to plead a physician-patient *262 relationship.[8]
Reversed and remanded.
PADOVANO and THOMAS, JJ., concur.
NOTES
[1] Section 95.11(4)(b), Florida Statutes (2004), provides:

An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued, except that this 4-year period shall not bar an action brought on behalf of a minor on or before the child's eighth birthday. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred, except that this 7-year period shall not bar an action brought on behalf of a minor on or before the child's eighth birthday. This paragraph shall not apply to actions for which ss. 766.301-766.316 provide the exclusive remedy.
Section 95.11(4)(b) is both a statute of limitations and a statute of repose. Judge Ervin explained the difference in his dissent in Doe v. Shands Teaching Hosp. & Clinics, Inc., 614 So.2d 1170, 1174 n. 2 (Fla. 1st DCA 1993):
A statute of repose precludes a right of action after a specified time, which is measured from the sale of a product, the completion of improvements to real property, or an incident of medical malpractice. Its effect is to cut off a right of action regardless of the time of its accrual or the time of a plaintiff's notice of the invasion of a legal right. University of Miami v. Bogorff, 583 So.2d 1000, 1003 (Fla.1991); Melendez v. Dreis & Krump Mfg. Co., 515 So.2d 735, 736 (Fla.1987). A statute of limitation, in contrast, sets a time limitation within which an action must be brought, which begins to run at the time an injury occurs or is discovered. Bauld v. J.A. Jones Constr. Co., 357 So.2d 401, 402 (Fla.1978).
[2] The second amended complaint alleged:

10. On June 7, 2000, Mr. Todd applied for social security disability income benefits. As part of the application he signed medical authorizations directed at Dr. Marvin Johnson, as Mr. Todd considered Dr. Johnson to be his doctor.
11. Also, as part of his social security disability income application, Mr. Todd was instructed by the Social Security Administration to have a chest x-ray taken at Gainesville Radiology Group.
12. The records created by the Social Security Administration in a letter dated July 13, 2000 state that:
"After the examination or tests are completed, we will be glad to send a copy of the report to your doctor if you give us your permission."
13. The records created by the Social Security Administration also state that:
"No treatment will be given." (Emphasis in original record.)
14. On July 19, 2000, Mr. Todd signed an authorization for the Social Security Administration to release consultative evaluation results to: Marvin W. Johnson, M.D., 850 E. Main Street, Suite # 1, Lake Butler, FL, 32054.
15. On October 4, 2000, John Todd was asked by the employees at Gainesville Radiology Group who his doctor was. Mr. Todd told the employees that Dr. Marvin Johnson was his doctor.
[3] The second amended complaint alleged:

16. Also, on October 4, 2000 an employee of Gainesville Radiology Group called Dr. Johnson's office and told Dr. Johnson's office that Mr. Todd had a 2 cm mass on his chest x-ray.
17. A notation in Mr. Todd's medical record made by an employee of Dr. Johnson state[s]:
"Dr. Johnson,
Dr. Alderman from N.F. Radiology wants you to call her concerning John C. Todd."
18. Below this notation in different handwriting is the notation:
"Order x-ray that showed mass in lung."
19. Apparently, Dr. Johnson considered Mr. Todd to be his patient, as his office ordered the chest x-ray.
. . . .
23. The finding on the chest x-ray, which showed Mr. Todd had a mass suspicious for malignant cancer, was concealed from Mr. Todd from October 4, 2000 to July 23, 2004.
. . . .
25. On or about October 4, 2000 and everyday thereafter until July 23, 2004, Dr. Marvin Johnson concealed from Mr. Todd the fact that Mr. Todd had been diagnosed with a 2 cm mass in his lung that was suspicious for malignancy.
. . . .
27. The earlier cancer is diagnosed the better is the patient's prognosis.
28. At no time between October 4, 2000 and July 23, 2004 did either Defendant Marvin Johnson, M.D. or his staff contact John Todd to tell him he had a suspicious mass found on the chest x-ray taken October 4, 2000.
29. Dr. Marvin Johnson, by his silence, concealed a medical condition that demanded immediate attention.
. . . .
32. Mr. Todd now has stage-four cancer.
. . . .
35. On or about October 4, 2000, and every day thereafter until July 23, 2004, Defendant Marvin Johnson, M.D. practiced medicine below the standard of care for a reasonably prudent physician, was negligent with concealment, and breached the duty to practice medicine within the accepted standard in the medical community in that:
a. he concealed the fact that Mr. Todd's chest x-ray showed a malignant two centimeter mass on October 4, 2000. The information was concealed from Mr. Todd from October 4, 2000 to July 23, 2004.
b. he caused an approximate three and one-half year delay in the treatment of Mr. Todd's cancer.
[4] The notice of intent to initiate litigation for medical malpractice was dated September 20, 2005.
[5] The Todds' complaint alleged that Dr. Johnson breached a duty on October 4, 2000, and every day thereafter until July 23, 2004, because, presented with a patient's chest x-ray showing a two centimeter mass in the lung suspicious for malignancy, he had a duty to follow up and notify the patient immediately so that treatment could be initiated. On appeal, however, the Todds do not argue that the statute of repose is satisfied on the theory that a new wrong was done every day the problem went unreported.
[6] The trial court's order granting motion to dismiss second amended complaint did not cite case authority, but its order granting defendant's motion to dismiss first amended complaint with leave to amend cited "Nehme v. Smithkline, 863 So.2d 201[sic], Carlton v. Ridings, 422 So.2d 1067 (Fla. 1st DCA 1982) and Glass v. Camara, 369 So.2d 625 (Fla. 1st DCA 1979)." All three of these decisions pertained to malpractice committed before chapter 96-167, Laws of Florida, took effect, and must be understood in that light. See Ch. 96-167, § 2, at 221, Laws of Fla. ("This act shall take effect July 1, 1996, and shall not apply to causes of action arising from acts, events, or occurrences that take place before that date.").

In Nehme v. Smithkline Beecham Clinical Labs., 863 So.2d 201, 204 (Fla.2003), the court described the pertinent difference between the superseded version and the post-1996 version of section 95.11(4)(b) that governs here:
The pre-1996 version of the statute provides:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. An "action for medical malpractice" is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph in which it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the 4-year period, the period of limitations is extended forward 2 years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed 7 years from the date the incident giving rise to the injury occurred.
§ 95.11(4)(b), Fla. Stat. (1993) (emphasis added). The post-1996 version does not contain the above-underlined phrase.
Like the superseded statute which they interpret, Nehme, Carlton and Glass do not control here. The Todds' discovery of the nondisclosure within the initial four-year period of repose does not preclude extension of the period for a total of up to seven years. § 95.11(4)(b), Fla. Stat. (2004).
[7] The court also invoked the maxim noscitur a sociis in construing the statute. After defining both "fraud" and "intentional misrepresentation of fact," the court stated that, because both terms "involve a level of knowledge or intent, we conclude that the legislative intent was to extend the repose period when intentional acts prevent discovery of the injury. A negligent diagnosis, without more, does not constitute concealment." Nehme, 863 So.2d at 205.

Another rule of statutory construction counsels against deeming any portion of a statute superfluous. See Simpson v. Knight, 12 Fla. 144, 147 (Fla.1867) (noting "the duty of the court to construe the law if possible, so as to give a meaning and effect to every word and clause in the act"). If "concealment" has any meaning and effect distinct from "intentional misrepresentation" and "fraud," "concealment" must at least encompass the knowing failure to disclose information which there is a duty to disclose.
[8] In addition to the allegations set out above, the complaint alleged:

7. Plaintiff, John Todd, had office visits with the Defendant, Marvin Johnson, M.D., on January 25, 2000, January 28, 2000, July 19, 2004, and July 23, 2004.
On at least one of these occasions, Dr. Todd allegedly diagnosed and treated him.