ON MOTION FOR REHEARING
 

 EVANDER, J.
 

 We grant the motion for rehearing and withdraw our opinion of May 15, 2009, and substitute therefore the amended opinion issued herein.
 

 A. Duda and Sons, Inc. (“Duda”) appeals from a final order of an administrative law judge (ALJ) of the Division of Administrative Hearings denying Duda’s challenges to certain adopted rules, statutory interpretations, and policies of the St. Johns River Water Management District (“District”). The primary issue on appeal is whether the District has properly interpreted the agricultural exemption set forth in section 373.406(2), Florida Statutes (2007).
 
 [1]
 
 The ALJ agreed with the District’s interpretation, and accordingly, upheld the challenged rules and policies. We affirm, in part, and reverse, in part.
 

 Duda is a large agricultural entity that operates farms and groves throughout the State. One of the farms, Cocoa Ranch, is over 18,000 acres and is located within the District’s geographical boundaries. As the result of an enforcement investigation, the District served an administrative complaint on Duda, alleging that Duda had constructed numerous drainage ditches on the Cocoa Ranch property without first obtaining required permitting from the District. Duda contended that, pursuant to section 373.406(2), it was exempt from the District’s permitting requirements and requested a hearing on the District’s administrative complaint. Duda also filed a five-count petition challenging the validity of certain District rules, statutory interpretations, and policies — all of which related to the District’s interpretation of section 373.406(2). The ALJ consolidated the rule challenge and enforcement matters for hearing and subsequently upheld the District’s positions in both cases. This appeal addresses only the rule challenge case.
 
 [2]
 

 The Florida Legislature has clearly stated that it is a policy of the State to provide for the management of water and related land resources. § 373.016(3), Fla. Stat. (2007).
 
 [3]
 
 To help implement the policy,
 
 *741
 
 water management districts are authorized to require permits and “impose such reasonable conditions as are necessary to assure that the construction or alteration of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or
 
 works
 
 will comply with [chapter 373] and applicable rules promulgated thereto and will not be harmful to the water resources of the district.” § 373.413(1), Fla. Stat. (2007) (emphasis added). “Works” is defined to mean “all artificial structures, including, but not limited to, ditches, canals, conduits, channels, culverts, pipes, and other construction that connects to, draws water from, drains water into, or is placed in or across the waters in the state.” § 373.403(5), Fla. Stat. (2007).
 

 However, the Legislature has also placed limitations on the districts’ regulatory powers by establishing certain exemptions to the districts’ rules and regulations. The exemption at issue in this case reads as follows:
 

 (2) Nothing herein, or in any rule, regulation, or order adopted pursuant hereto, shall be construed to affect the right of any person engaged in the occupation of agriculture, silviculture, floriculture, or horticulture to alter the topography of any tract of land for purposes consistent with the practice of such occupation. However, such alteration may not be for the sole or predominant purpose of impounding or obstructing surface waters.
 

 § 373.406(2). Thus, in the first sentence of section 373.406(2), the Legislature created an exemption from the districts’ rules and regulations for persons who alter the topography of land where such persons: 1) are engaged in the occupation of agriculture; and 2) the alteration of the topography is consistent with the practice of agriculture. But then, in the second sentence, the Legislature limits the scope of the exemption by providing that the alteration of topography “may not be for the sole or predominant purpose of impounding or obstructing surface waters.”
 

 The District interprets the second sentence to mean that there is no exemption if the alteration of topography “has the effect of more than incidentally trapping, obstructing or diverting surface waters.” In support of this interpretation, the District cites to the commentary to section 4.02(2) of A Model Water Code, a legislative proposal published by the University of Florida in 1972.
 

 COMMENTARY
 

 The intent of this subsection is to allow persons engaged in agricultural ... operations to engage in ordinary farming ... without obtaining a construction permit.... Theoretically, such operations may incidentally trap or divert some surface water. For example, by plowing a pasture a farmer is trapping and diverting surface water that would have constituted part of the runoff and eventually would have become part of the surface water of the state. Without this exemption, the farmer would have theoretically been required to obtain a permit.... In addition, it would appear that all changes of topography which would alter natural runoff, such as contour plowing, would also require a construction permit.... The quantity of the water being diverted and trapped is so small that it would serve no practical
 
 *742
 
 purpose to require a permit for such work. In addition, the administrative burden of regulating such operations would be enormous....
 

 Section 4.02(2) of the Model Water Code is virtually identical to section 373.406(2), Florida Statutes, as enacted by the Legislature in 1972. However, as noted by Duda, the Commentary was not referenced by the Legislature when it enacted section 373.406(2).
 

 By contrast, Duda appears to argue that if the primary or predominant intent or purpose of the property owner in altering the topography of his land is consistent with the practices of agriculture, then the property owner is exempt from a district’s rules and regulations, even if the alteration affects surface waters. Duda further contends that the District’s interpretation renders the agricultural exemption virtually meaningless.
 

 The District counters that Duda’s interpretation would result in unregulated construction and operation of ditches, canals, culverts, and other construction on millions of acres of Florida agricultural land. — -regardless of the impact on water resources. We conclude that neither party’s interpretation of section 373.406(2) is correct.
 

 It is the second sentence of section 373.406(2) that is at the core of the parties’ dispute. In particular, the parties disagree as to the interpretation of three different words — “predominant,” “purpose,” and “obstructing.” We will discuss these three words separately, starting with “purpose.” In doing so, we observe that pursuant to section 120.68(7)(d), Florida Statutes (2007),
 
 [4]
 
 the standard of review of an ALJ’s final administrative order determining an issue of statutory interpretation is
 
 de novo. See Sw. Fla. Water Mgmt. District v. Save the Manatee Club, Inc.,
 
 773 So.2d 594, 597 (Fla. 1st DCA 2000);
 
 see also Metro. Dade County v. Dep’t of Envtl. Protection,
 
 714 So.2d 512, 515 (Fla. 3d DCA 1998);
 
 Schrimsher v. Sch. Bd. of Palm Beach County,
 
 694 So.2d 856, 861 (Fla. 4th DCA 1997).
 

 Duda contends that by its plain meaning, the word “purpose” as used in section 373.406(2) means the actor’s subjective intent. The District successfully argued to the ALJ that “purpose” has more than one meaning and, in the context of section 373.406(2), it means the action’s objective effect or function. We agree with the District and the ALJ.
 

 Where, as in this case, the statute does not define a term at issue, courts resort to canons of statutory construction to derive the proper meaning.
 
 Nehme v. Smithkline Beecham Clinical Labs., Inc.,
 
 863 So.2d 201, 204 (Fla.2003). One of the most fundamental tenets of statutory construction requires that the courts give statutory language its plain and ordinary meaning, unless words are defined in the statute or by the clear intent of the Legislature.
 
 Id.
 
 at 204-205. When necessary, the plain and ordinary meaning of words can be ascertained by reference to a dictionary.
 
 Id.
 
 at 205. Here, reference to a dictionary does not resolve the issue. Among the accepted meanings of the word “purpose” are “intention” and “an object or end to be attained.”
 
 See Merriam Webster’s Collegiate Dictionary
 
 949 (10th ed. 1997). Indeed, both “intention” and “function” can be synonyms of “purpose.”
 
 See Roget’s 21st Century Thesaurus
 
 (3d ed.), retrieved May 08, 2009, from Thesaurus.com web
 
 *743
 
 site: http://dictionaryl .classic.reference. com/browse/purpose.
 

 The District’s interpretation would, however, result in the application of an objective test to determine whether the particular property owner’s construction activities are subject to the District’s rules and regulations. For example, in the instant case, the inquiry would be whether the sole or predominant function or effect of Duda’s drainage ditches was to impound or obstruct surface waters. By contrast, the use of Duda’s proposed interpretation would necessitate the application of a subjective test,
 
 e.g.,
 
 whether Duda’s sole or predominant intent in constructing a drainage ditch was to impound or obstruct surface water.
 

 In enacting Chapter 373, the Legislature granted water management districts broad powers to provide for the management of water and related land resources. Although the Legislature determined that certain agricultural activities would be exempt from the districts’ rules and regulations, we conclude it is unlikely that the Legislature would intend that entitlement to the agricultural exemption would be determined by the property owner’s subjective intentions. To permit an agricultural property owner to avoid regulation based on subjective intentions would be inconsistent with the Legislature’s granting of broad powers to the State’s water management districts.
 

 Duda next contends that by its plain meaning, the word “obstructing,” as applied to surface waters, means “to block the flow of surface waters.” According to Duda, the District has ignored the plain meaning of the statute by determining that “diverting” of surface waters is encompassed within the meaning of “obstructing” surface waters. The word “obstructing” is not defined in chapter 373. As in the case of the word “purpose,” utilization of the dictionary does not resolve the parties’ dispute. “Obstruct” is defined both as “to block or close up by an obstacle” and “to hinder from passage, action, or operation.”
 
 See Merriam Webster’s Collegiate Dictionary
 
 803 (10th ed. 1997).
 

 However, we believe that the District’s interpretation is more consistent with legislative intent. One of the District’s responsibilities is to regulate water and related land resources so as to prevent damage from flooding, soil erosion or excessive drainage. § 373.016(3)(e). Clearly, damage from flooding, soil erosion or excessive drainage can occur from the diverting of surface water from its natural flow, even if the flow of the surface water is not “fully blocked.” By contrast, there does not appear to be any policy served by defining “obstructing” as narrowly as suggested by Duda.
 

 Although we find no error in the District’s interpretation of “purpose” and “obstructing,” we conclude that the District has ignored the plain meaning of the word “predominant” in its application of section 373.406(2). The District has interpreted “predominant” to mean “more than incidental.” As a result, the District interprets the second section of the statute to read, “however, such alteration may not have the effect of more than incidentally trapping, obstructing, or diverting surface waters” as opposed to the actual language of “however, such alteration may not be for the sole or predominant purpose of impounding or obstructing surface waters.” “Predominant” does not mean “more than incidental.” There are many gradations between “predominant” and “incidental.” An item can be “more than incidental” but not “predominant.” For example, if an individual had four equal sources of income totaling $100,000/year, all four sources of income would be “more than incidental.” However, none of the four would be a. predominant source of income. Similarly, an alteration of topog
 
 *744
 
 raphy may have more than an incidental effect of impounding or obstructing surface waters even though that was not the predominant effect.
 

 The lack of merit in the District’s argument is further demonstrated by the fact that pursuant to section 373.406(6), the District has already exempted from regulation any activity which has “only minimal or insignificant individual or cumulative adverse effects on the water resources of the district” for both agricultural and non-agricultural activities.
 
 [5]
 
 The District’s interpretation of section 373.406(2), if accepted, would render the agricultural exemption virtually meaningless. As conceded by the District at oral argument, an alteration of topography that had the effect of only incidentally impounding or obstructing surface waters would, in almost all cases, already be exempt from regulation pursuant to subsection (6) — regardless of whether the property owner was engaged in the occupation of agriculture.
 

 We reject the District’s contention that defining “predominant” as “more than incidental” is supported by the commentary to section 4.02(2) set forth in A Model Water Code. As previously noted, this commentary was not even referenced by the Legislature when it enacted section 373.406(2). Furthermore, the commentary does not define “predominant” to mean “more than incidental” — it merely gives examples of agricultural activities that would be exempt from regulation and describes the trapping or diverting of water in those examples as “incidental.”
 

 In its brief, Duda contends that the primary purpose of its drainage ditches was to lower the level of the groundwater table so as to enhance agricultural productivity. Section 373.406(2) provides an exception to the agricultural exemption for the impounding or obstructing of surface waters — not ground water.
 
 [6]
 
 Accordingly, if Duda constructed a drainage ditch for a purpose consistent with the practice of agriculture and if the predominant effect of the drainage ditch was to lower the groundwater table level, then the construction of the drainage ditch would be exempt from the District’s permitting requirements even if the ditch had a more than incidental effect of impounding or obstructing surface waters.
 

 An agency may not redefine statutory terms to modify the meaning of a statute.
 
 Campus Commc’ns, Inc. v. Dep’t of Revenue,
 
 473 So.2d 1290 (Fla.1985) (department rule defining “newspaper” for purposes of a statutory sales tax exemption invalid for adding criteria to statute);
 
 see also Pedersen v. Green,
 
 105 So.2d 1 (Fla.1958) (where statute excepted “feed” from sales tax, agency cannot adopt rule limiting exemption to feed for animals kept for agricultural purposes thereby exclud
 
 *745
 
 ing feed for zoo animals). Nor may an agency apply a construction which conflicts with the plain language of the statute. If an agency rule contravenes a statute, it must be rejected as an invalid exercise of delegated legislative authority.
 
 Dep’t of Natural Res. v. Wingfield Dev. Co.,
 
 581 So.2d 193, 198 (Fla. 1st DCA 1991). Here, the rules and policies adopted by the District in accordance with its erroneous interpretation of “predominant” conflict with the plain language of section 373.406(2), are an improper attempt to modify the statute, and constitute an invalid exercise of delegated legislative authority.
 

 Based on our conclusion that the ALJ erred in accepting the District’s erroneous interpretation of “predominant,” we reverse the ALJ’s denial of count II of Duda’s petition.
 
 [7]
 
 We affirm as to counts I, III, IV and V.
 
 [8]
 

 AFFIRMED in part; REVERSED in part; and REMANDED.
 

 MONACO, C.J., COBB, W., Senior Judge, concur.
 

 [1]
 

 . The original version of section 373.406(2) was enacted in 1972. The minor amendments to the statute made subsequent to that date are not material to this appeal.
 

 [2]
 

 . Duda has filed a separate appeal in the enforcement action.
 

 [3]
 

 . Section 373.016(3), Florida Statutes (2007) provides:
 

 (3) It is further declared to be the policy of the Legislature:
 

 (a) To provide for the management of water and related land resources;
 

 (b) To promote the conservation, replenishment, recapture, enhancement, development, and proper utilization of surface and ground water;
 

 (c) To develop and regulate dams, im-poundments, reservoirs, and other works and to provide water storage for beneficial purposes;
 

 (d) To promote the availability of sufficient water for all existing and future reasonable-beneficial uses and natural systems;
 

 (e) To prevent damage from floods, soil erosion, and excessive drainage;
 

 (f) To minimize degradation of water resources caused by the discharge of storm-water;
 

 (g) To preserve natural resources, fish, and wildlife;
 

 (h) To promote the public policy set forth ins. 403.021;
 

 (i) To promote recreational development, protect public lands, and assist in maintaining the navigability of rivers and harbors; and
 

 
 *741
 
 (j) Otherwise to promote the health, safety, and general welfare of the people of this state.
 

 In implementing this chapter, the department and the governing board shall construe and apply the policies in this subsection as a whole, and no specific policy is to be construed or applied in isolation from the other policies in this subsection.
 

 [4]
 

 . Section 120.68(7)(d) provides:
 

 The court shall remand a case to the agency for further proceedings consistent with the court's decision or set aside agency action, when it finds that:
 

 id) The agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action.
 

 [5]
 

 . Section 373.406(6) provides:
 

 Any district or the department may exempt from regulation under this part those activities that the district or department determines will have only minimal or insignificant individual or cumulative adverse impacts on the water resources of the district. The district and the department are authorized to determine, on a case-by-case basis, whether a specific activity comes within this exemption. Requests to qualify for this exemption shall be submitted in writing to the district or department, and such activities shall not be commenced without a written determination from the district or department confirming that the activity qualifies for the exemption.
 

 [6]
 

 . "Groundwater" is defined to mean "water beneath the surface of the ground, whether or not flowing through known and definite channels.” § 373.019(9), Fla. Stat. (2007). "Surface water" is defined as "water upon the surface of the earth, whether contained in bounds created naturally or artificially or diffused. Water from natural springs shall be classified as surface water when it exits from the spring onto the earth's surface.” § 373.019(19), Fla. Stat. (2007).
 

 [7]
 

 . In count II, Duda alleged that section 3.4.1(b) of the District's Applicant's Handbook, adopted by reference in Rule 40C-4.091 of the Florida Administrative Code, was invalid because it greatly limited the scope of the agricultural exemption and thereby constituted an improper amendment of that statute.
 

 [8]
 

 . In count I of its petition. Duda alleged that the District had improperly implemented a policy of requiring the agricultural community to obtain permits for work that, pursuant to section 373.406(2), was exempt from any permit requirements. We find that, under the facts of this case, the District had no “policy'' other than what was reflected in its adoption and enforcement of a rule (40C-4.091) that was in contravention of section 373.406(2). In counts III and V, Duda alleged that rules 40C-4.041 and 40C-44.041, respectively, which required permits for certain construction activities, were vague, arbitrary, and capricious and conflicted with section 373.406(2). We find no error in the ALJ’s determination that these rules were valid. By their express terms, these rules did not apply to exempt activities. In count IV, Duda alleged that the District relied on certain publications to determine whether an activity qualified for an agricultural exemption and thus such publications constituted "rules” which had not been properly adopted. We agree with the ALJ that the District's reference to these publications did not constitute the use or adoption of unpublished rules. Instead, these publications were simply documents which the District relied upon in an attempt to ascertain the legislative intent behind section 373.406(2).