983 So.2d 51 (2008)
Nancy A. Burns STRATTON, Appellant,
v.
SARASOTA COUNTY, Florida, a political subdivision of the State of Florida, Appellee.
No. 2D07-3209.
District Court of Appeal of Florida, Second District.
May 7, 2008.
Rehearing Denied June 13, 2008.
*53 Gene M. Strebel of Law Offices of Michael Moran, Sarasota, and James K. Green of James K. Green, P.A., West Palm Beach, for Appellant.
Stephen E. De Marsh, County Attorney, and Milan Brkich, Assistant County Attorney, Sarasota, for Appellee.
VILLANTI, Judge.
Nancy Burns Stratton appeals from the final judgment of foreclosure entered in favor of Sarasota County after it filed liens for the cost of demolition against her real property. Because the final judgment includes amounts to which the County is not entitled, we reverse and remand for further proceedings.
In 2001, Stratton purchased a Gulf-front house that had been originally designed by a renowned architect associated with the Sarasota School of Architecture. The house, which was built in 1970, was known as the "Solomon house," and it was well known in Sarasota, particularly in its art community. The house consisted of a residence and an artist's studio, which were separated by an enclosed courtyard but connected by a raised bridge. When Stratton purchased the house, it was subject to an existing condemnation order from the County because the Gulf of Mexico was rapidly eroding the shoreline of the property. Stratton sought to have the house designated as a historic landmark, which would have allowed her to make extensive repairs to the western portion of the house and to construct protective seawalls and berms without running afoul of various County and FEMA regulations. In the absence of the historic landmark designation or certain variances, numerous regulations and code provisions prohibited Stratton from constructing shore protection and repairing the house.
After several hearings, the County denied Stratton's request to have the house designated a historic landmark and denied her requests for variances. Thus, the erosion of the shoreline continued, and the house began literally crumbling into the Gulf of Mexico. At that point, because the house constituted a hazard to beachgoers, the County declared the house to be an imminent threat to public safety. It then obtained an emergency condemnation and demolition order, solicited an emergency bid to demolish the western portion of the house, and proceeded to demolish that portion of the house. This demolition formed the basis of the County's claim of lien for $129,315.23, which was recorded against *54 the house and property on April 29, 2003. Of this total, $18,865.67 represented an amount claimed by the County for the payroll expenses allegedly incurred by its code enforcement employees in supervising the demolition. An additional $2167.87 was for expenses incurred by the Sarasota County Fire Marshal for keeping a fire watch on the house during demolition, and $3465.00 was for expenses incurred by the Sarasota County Sheriff's Office for providing security around the house during demolition. The County filed its initial foreclosure action on this lien on August 18, 2004.
Due to the continued encroachment of the Gulf of Mexico onto Stratton's property, the County subsequently declared the eastern portion of the house unsafe as well, and it obtained two bids for this demolition. The County then demolished the remainder of the house, and this demolition formed the basis of the County's second claim of lien, which was recorded on January 7, 2005. This lien was for $91,072.86, of which $5382.48 was for the payroll expenses allegedly incurred by code enforcement employees in supervising the demolition. The County did not claim any expenses for the fire marshal's or the sheriff's time in this lien. The County then amended its foreclosure action to include both liens.
In the trial court, Stratton stipulated that the County's liens were valid, and she contested only the reasonableness of the amounts claimed by the County. After a nonjury trial, the trial court entered a final judgment of foreclosure and scheduled a foreclosure sale of the property.[1] That sale was stayed pending this appeal.
In this appeal, Stratton raises four grounds for reversing the foreclosure judgment: (1) the foreclosure judgment is dependent on the outcome of Stratton's inverse condemnation action against the County, which is still pending on appeal; (2) the bids for demolition accepted by the County were patently unreasonable; (3) the County was not entitled to include the payroll expenses of its employees in its liens; and (4) the payroll expenses claimed were not established by competent evidence at the nonjury trial. Stratton's claim in ground (1) has been rendered moot by this court's affirmance of the final judgment in favor of the County in Stratton's inverse condemnation action. See Stratton v. Bd. of County Comm'rs, No. 2D06-4084, 2008 WL 1837307 (Fla. 2d DCA Apr. 25, 2008). In addition, we reject without comment Stratton's claim in ground (2) that the demolition bids obtained by the County were patently unreasonable. However, we agree with Stratton on ground (3) that the County's claim of lien included certain amounts to which it was not entitled, and we reverse and remand for recalculation of the foreclosure judgment on that basis alone. This renders ground (4) of Stratton's appeal moot.
In ground (3) of her appeal, Stratton argued that the County was not entitled to include in its claim of lien the payroll expenses incurred by the County for its employees' time in dealing with the demolitions. In response, the County argued that its local ordinances allow for an award of "the entire cost of demolition" and "all administrative costs" and that all of the disputed payroll expenses fall under one of these categories. Neither party's position is entirely correct.
Chapter 162, Florida Statutes (2004), which deals with county or municipal *55 code enforcement, limits the County to imposing fines and collecting the repair costs it actually incurs in correcting code violations. Section 162.09(1), Florida Statutes (2004), permits a local code enforcement board to impose fines against a property owner who fails to correct conditions constituting code violations on his or her property. The County may also "make all reasonable repairs which are required to bring the property into compliance and charge the violator with the reasonable cost of the repairs along with the fine imposed pursuant to this section." § 162.09(1). Section 162.09(2)(a) sets forth the permissible per diem fines and permits those fines to be imposed together with "all costs of repairs pursuant to subsection (1)." Section 162.09(2)(b) sets forth the criteria to be used in determining the amount of the fine. Nothing in these provisions permits the County to directly pass through the payroll expenses for the time spent by its code enforcement employees to an individual property owner in a code enforcement proceeding.
In this appeal, the County argues that it is relying on its local code provisions rather than the provisions of chapter 162 to collect these payroll expenses from Stratton. However, the County has no authority to impose penalties that are not authorized by law. See Art. V, § 1, Fla. Const. (permitting the legislature to create commissions and administrative bodies and grant them quasi-judicial powers); Art. I, § 18, Fla. Const. (forbidding administrative bodies from imposing any penalties except as provided by law); see also Op. Att'y Gen. Fla. 2000-53 (2000). Neither chapter 162 nor any other statute permits the County to directly pass through its payroll expenses for code enforcement employees' time spent on an individual case. Instead, the County is authorized only to impose fines to recoup these costs. Therefore, the County cannot rely on local code provisions to collect these expenses in contravention of the authorized penalties set forth in chapter 162.
In the alternative, the County argues that the payroll expenses for its code enforcement employees were properly included in the lien on Stratton's property as part of the "costs of repair" incurred in correcting the violation. However, this argument fails for three reasons.
First, the plain language of section 162.09(2) makes it clear that "costs of repair" do not include payroll expenses for code enforcement employees' time. Section 162.09(2)(d) permits counties to impose higher fines than those set out in section 162.09(2)(b) under certain circumstances. In addition to those higher fines, section 162.09(2)(d) permits a county to "impose additional fines to cover all costs incurred by the local government in enforcing its codes and all costs of repairs pursuant to subsection (1)." (Emphasis added.)
From this statutory language, it is apparent that the legislature did not contemplate that the "costs incurred by the local government in enforcing its codes" could be included as "costs of repairs" because these two items are listed separately. If the phrase "costs of repairs" is interpreted to include the County's payroll expenses for its code enforcement employees, then the language permitting additional fines to cover the costs of enforcing the County's code would be surplusage. This court will not interpret statutes so as to render portions of them meaningless when a reading that gives meaning to all portions is possible. Am. Home Assurance Co. v. Plaza Materials Corp., 908 So.2d 360, 366 (Fla.2005); Unruh v. State, 669 So.2d 242, 245 (Fla.1996). This court can give meaning to both portions of the statute *56 by refusing the County's invitation to use an expansive interpretation of the phrase "costs of repairs" to include payroll expenses for County code enforcement employees and by finding that payroll expenses may be included only as part of the increased fines allowed for the costs of enforcing the County's code.
Second, the term "costs" is not generally construed to include the costs of doing business. Instead, "costs" are generally intended to be "expenses incurred in prosecuting or defending an action." Lee County v. Galaxy Fireworks, Inc., 698 So.2d 1371, 1372 (Fla. 2d DCA 1997). The costs involved in "running the system" are not usually recoverable as part of a specific action against an individual. Cf. Mickler v. State, 682 So.2d 607, 609 (Fla. 2d DCA 1996) (affirming the trial court's denial of an award of juror costs against a defendant because they were "expenditures that must be made in order to maintain and operate the judicial system irrespective of specific violations of the law"); Gibson v. Troxel, 453 So.2d 1160, 1163 (Fla. 4th DCA 1984) (disallowing an award of time for the clerk, judge, and jury after a mistrial because "[t]here is no authority to assess costs to reimburse the system") disapproved of on other grounds by Keene Bros. Trucking, Inc. v. Pennell, 614 So.2d 1083, 1085-86 (Fla.1993).
Here, there is no argument that the payroll expenses for code enforcement employees are not part of the cost of running the code enforcement system. The County incurs payroll expenses for its code enforcement employees regardless of the number of violations or any one specific violation of the building code. In other words, the County's operating costs for its code enforcement department are a constant overhead, and no one particular portion can be considered a separate cost actually incurred by the County in prosecuting a particular code violation.
Third, the language of the County's demolition ordinance militates against an interpretation that would include payroll expenses for code enforcement employees as a recoverable "cost." The County code provision relied upon by the County reads as follows:
103.5.9(a) The Building Official shall assess the entire cost of demolition and removal including asbestos abatement, the sodding or seeding of the lot, and rodent extermination against the real property in the form of a lien. This lien upon such property shall be superior to all others except property taxes, and shall include all administrative costs including postal expenses, the cost of newspaper publications, and the like.
Sarasota County Building Code § 22-34.
The County contends that it can recover payroll expenses as part of either the "entire cost of demolition" or as an "administrative cost." However, "[u]nder the doctrine of noscitur a sociis (a word is known by the company it keeps), one examines the other words used within a string of concepts to derive the legislature's overall intent." Nehme v. Smithkline Beecham Clinical Labs., Inc., 863 So.2d 201, 205 (Fla.2003). When examining the words used, "general and specific words which are capable of an analogous meaning being associated together take color from each other, so that the general words are restricted to a sense analogous to the less general." Carraway v. Armour & Co., 156 So.2d 494, 495 (Fla.1963) (quoting Ex parte Amos, 93 Fla. 5, 112 So. 289, 293 (1927)). Similarly, the doctrine of ejusdem generis states that when a general *57 phrase follows a list of specific items, "the general phrase will be interpreted to include only items of the same type as those listed." State v. Hearns, 961 So.2d 211, 219 (Fla.2007).
Here, the code provision relied upon by the County lists asbestos abatement, resodding or seeding, and rodent extermination as "costs of demolition." None of these types of costs are analogous to the payroll expenses incurred for code enforcement employees. Thus, under the doctrine of noscitur a sociis, the term "costs of demolition" would not generally be construed to include payroll expenses, a term not remotely in the same company as the listed items. In addition, the same code provision lists postal expenses and newspaper publication charges and "the like" as "administrative costs." Again, neither of these specific items is analogous to the payroll expenses for code enforcement employees. Because payroll expenses are not the same type of expense as postage and costs of newspaper publications, they would not fall within the general phrase "the like" under the doctrine of ejusdem generis. Moreover, it simply does not make sense that the County would specify that costs such as postage and rodent extermination could be recovered but would leave the recovery of payroll expenses to be inferred through principles of statutory construction. For these three reasons, we hold that the County was not entitled to pass through the payroll expenses for its code enforcement employees as part of the "costs of demolition" or "administrative costs" recoverable in this case, and we reverse the judgment of foreclosure to the extent that it includes recovery of these expenses.
As to the amounts claimed for the fire marshal's expenses and the sheriff's expenses incurred as part of the demolition of the western portion of the house, however, the analysis is different. In criminal cases, investigative costs of law enforcement and fire departments are recoverable because, unlike the costs of "running the system," they arise from a specific violation of the law. See, e.g., Mickler, 682 So.2d at 610. The same logic applies here. The expenses incurred by the fire marshal and the sheriff's department in this case were not "expenditures that must be made in order to maintain and operate the [code enforcement] system irrespective of specific violations." Mickler, 682 So.2d at 609. Instead, they were case-specific expenses incurred by separate, autonomous County agencies as a result of the unique nature of the destruction of Stratton's property and its location on a public beach. Both the fire marshal and the sheriff's office have duties wholly unrelated to the supervision of the demolition of Stratton's property. Their expenses are not part of the County's code enforcement overhead and were incurred only in connection with curing this specific code violation, as evidenced by the fact that no such expenses were incurred in the demolition of the eastern portion of the house which was not falling into the Gulf. Accordingly, these expenses were properly recoverable by the County in this case as part of the "cost of demolition," and they were properly included in the final judgment.
In sum, we reverse the final judgment of foreclosure and remand for the trial court to recalculate the amount of the lien without an award for the payroll expenses of the County's code enforcement personnel. This will necessitate recalculating the interest claimed by the County as well. In all other respects, the final judgment is affirmed.
*58 Affirmed in part, reversed in part, and remanded for further proceedings.
WHATLEY and WALLACE, JJ., Concur.
NOTES
[1] The final judgment in this case is entitled "Final Summary Judgment"; however, it is clear from the record that the trial court held a bench trial and that the use of the term "summary judgment" is a misnomer.