SLEET, Judge.
Rosalyn Roker appeals the final summary. judgment entered in favor of Tower Hill Preferred Insurance Company on her breach of contract claim arising from sinkhole damage to her home. Because a material issue of fact remains as to the method of subsurface repair, we reverse.
In 2010 Roker’s home sustained sinkhole damage, and she timely filed a claim with her insurer, Tower Hill. Tower Hill retained a professional engineer from AMEC-BCI Engineers & Scientists (BCI), who confirmed that the damage was a result of sinkhole activity. BCI’s recommended subsurface remediation plan consisted of compaction and chemical grouting. Tower Hill acknowledged coverage for the sinkhole loss and informed Roker that she needed to enter into a contract for the subsurface and foundation repairs recommended by BCI before it would issue payment for those repairs.[1]
After receiving BCI’s recommendations, Roker hired Florida Testing and Environmental, Inc. (FTE), for a second opinion. FTE agreed that Roker’s home sustained sinkhole damage but disagreed with the *692 scope of the subsurface repairs recommended by BCI. Specifically, FTE recommended underpinning in addition to compaction and chemical grouting. Roker elected to follow FTE’s recommendation and entered into a contract with Champion Foundation Repair Systems to perform the repairs recommended by FTE. Champion’s estimate for the recommended repairs was significantly higher than BCI’s. Roker submitted the Champion contract to Tower Hill for approval. Tower Hill rejected the contract and requested neutral evaluation.
After his evaluation, the neutral evaluator agreed that a sinkhole was the cause of the damage to Roker’s home and substantially approved BCI’s remediation plan. He opined that FTE’s recommended plan of underpinning and interior chemical grouting was unnecessary. After this report, Tower Hill informed Roker that it would only approve a contract for BCI’s recommended method of subsurface repair.
In response, Roker sued Tower Hill for breach of contract. She alleged that Tower Hill breached the insurance policy when it failed to approve the Champion repair contract and pay for the method of subsurface repair recommended by FTE. Tower Hill denied breaching the insurance contract and contended that it had a right to rely on the repair recommendations of its experts. Tower Hill filed a motion for summary judgment, arguing that Florida law and the insurance contract required Roker to enter into a contract for subsurface repair in accordance with BCI’s recommendations before any insurance benefits were due. Roker submitted her engineer’s affidavit in opposition and argued that there was a material issue of fact as to the proper method of subsurface repair. The trial court agreed with Tower Hill and granted summary judgment.
We review an order granting summary judgment de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126,130 (Fla.2000). Summary judgment is only proper when “there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Id. “[I]f the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the.slightest doubt that an issue might exist, that doubt must be resolved against the moving party and summary judgment must be denied.” Vasquez v. Sorrells Grove Care, Inc., 28 So.3d 222, 223 (Fla. 2d DCA 2010) (alteration in original) (quoting Nard, Inc. v. DeVito Contracting & Supply, Inc., 769 So.2d 1138,1140 (Fla. 2d DCA 2000)).
Here, the record reflects that a genuine issue of material fact remains concerning the proper method of subsurface repair to Roker’s home. Three qualified engineers conducted testing in compliance with the Florida sinkhole statutes and arrived at different opinions as to the proper method of repair. Neither Florida law nor the insurance contract require the insured to enter into a contract for subsurface repairs in accordance with the insurance company’s engineer’s recommendation before benefits are payable.
The resolution of sinkhole claims is heavily governed by statute. Roker’s homeowner’s insurance policy was issued by Tower Hill in July 2010; therefore the 2010 versions of the statutes apply. See Menendez v. Progressive Express Ins. Co., 35 So.3d 873, 876 (Fla.2010) (“[T]he statute in effect at the time an insurance contract is executed governs substantive issues arising in connection with that contract.” (quoting Hassen v. State Farm Mut. Auto. Ins. Co., 674 So.2d 106, 108 (Fla.1996))); *693 see also Warfel v. Universal Ins. Co. of N. Am., 36 So.3d 136, 137 n. 2 (Fla. 2d DCA 2010) (affirming the trial court’s decision not to apply an amended version of section 627.707 retroactively) approved, 82 So.3d 47 (Fla.2012). The 2010 version of section 627.707(5), Florida Statutes (2010), states in part as follows:
(a) Subject to paragraph (b), if a sinkhole loss is verified, the insurer shall pay to stabilize the land and building and repair the foundation in accordance with the recommendations of the professional engineer as provided under s. 627.7073, and in consultation with the policyholder, subject to the coverage and terms of the policy. The insurer shall pay for other repairs to the structure and contents in accordance with the terms of the policy.
(b) The insurer may limit its payment to the actual cash value of the sinkhole loss, not including underpinning or grouting or any other repair technique performed below the existing foundation of the building, until the policyholder enters into a contract for the performance of building stabilization or foundation repairs.
Tower Hill argues on appeal that section 627.707(5) should be read to require the insured to enter into a contract for the subsurface repairs recommended by the insurer’s engineer to the exclusion of any other professional recommendations. We do not agree. First, nothing in the plain language of the statute calls for such a requirement. And second, such a reading of the statute would render the neutral evaluation process meaningless. See Stratton v. Sarasota Cnty., 983 So.2d 51, 55 (Fla. 2d DCA 2008) (explaining that as a general rule, “[tjhis court will not interpret statutes so as to render portions of them meaningless when a reading that gives meaning to all portions is possible”).
Pursuant to section 627.7074(12), when neutral evaluation is invoked the neutral evaluator must determine the “need for and estimated costs of stabilizing the land and any covered structures or -buildings and other appropriate remediation or structural repairs.” The neutral evaluator may adopt or reject the expert opinions and recommendations of either party’s engineer and is authorized to render alternative opinions and repair recommendations. Id. Importantly, neutral evaluation is nonbinding, “and the parties retain access to court.” § 627.7074(13). And the statute provides a contingency for situations in which the insured declines to accept the neutral evaluator’s recommendation and awards attorney’s fees to the insured only if he or she obtains “a judgment that is more favorable than the recommendation of the neutral evaluator.” § 627.7074(15)(b).
As such, the legislature clearly intended and understood that some sinkhole disputes would still need to be resolved by juries. We cannot conceive of any scenario in which the insured could obtain a judgment more favorable than the neutral evaluator’s recommendation if the insured were not able to challenge the method of repair in court before a jury.
Tower Hill’s argument that the policy language of the sinkhole endorsement required Roker to enter into a contract based on Tower Hill’s engineer’s protocol as a condition precedent to payment is similarly without merit.[2] The policy mere *694 ly provides that Tower Hill will cover the necessary repairs “[i]n accordance with the recommendations of the professional engineer who verifies the presence of a[s]ink-hole [l ]oss in compliance with Florida sinkhole testing standards.” The policy does not specify that the insurance company’s engineer unilaterally dictates the method of subsurface repairs. The parties do not dispute the fact that all three engineers who evaluated Roker’s home complied with Florida sinkhole testing standards.
To the extent that Tower Hill is arguing that section 627.7073(l)(c) creates a presumption which justifies mandating that the insured accept the recommendation of an insurer’s expert, the idea that an insurance company is entitled to rely on that presumption in the litigation context was rejected by the Florida Supreme Court in Warfel, 82 So.3d at 57. In Warfel, the Florida Supreme Court explained that “[t]he application of a presumption as alleged and argued by [the insurer] at trial, that an insured could not overcome this presumption, would render any portion of section 627.7073 unconstitutional and inconsistent with all other provisions of the sinkhole statutes.” Id. at 58. Ultimately, the supreme court held that the presumption disappeared once evidence rebutting it was introduced. Id. at 59. Because Roker submitted evidence rebutting Tower Hill’s report, Tower Hill may not rely on section 627.7073(l)(c) to disprove the existence of a material fact.
The question of which recommended method of subsurface repair is sufficient to repair Roker’s home is a question for the jury. Roker cooperated with Tower Hill throughout the claims process and exercised her statutory right to reject the neutral evaluator’s recommendation. Tower Hill refused to pay anything for subsurface repair after being provided with a contract for repairs based on the recommendations of a qualified engineer. There remains a bona fide dispute as to the proper method of subsurface repair and, thus, Roker’s loss. Accordingly, we reverse the order granting Tower Hill’s motion for summary judgment regarding subsurface repairs and remand to the trial court for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
LaROSE and CRENSHAW, JJ., Concur.

. Ultimately, Tower Hill paid the highest estimate that it received for above-ground repairs. Therefore, we affirm the summary judgment as to that issue without further comment.

. The Sinkhole Loss Coverage Endorsement to Ms. Roker's homeowners’ insurance policy states, in pertinent part:
B. COVERAGE
We insure for direct physical loss to property covered under Section 1 caused by a Sinkhole Loss, including the costs incurred to:
*694 1. Stabilize the land and building; and
2. Repair the foundation;
In accordance with the recommendations of the professional engineer who verifies the presence of a Sinkhole Loss in compliance with Florida sinkhole testing standards and in consultation with you.
C. LOSS SETTLEMENT
We may limit any payment for Sinkhole Loss to the actual cash value, not including any repairs below the foundation, until you enter into a contract for building stabilization or foundation repairs. After you enter into a contract, we shall pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred, without requiring you to advance payment for such repairs. If building stabilization or foundation repair has begun and the professional engineer selected or approved by us determines that the repair cannot be completed within the policy limits, we shall either complete the professional engineer's recommended repair or tender the policy limits to you without a reduction for the repair expenses incurred.