NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CARL WILLIAM COSIO,                    )
                                       )
            Appellant,                 )
                                       )
v.                                     )        Case No. 2D16-2439
                                       )
STATE OF FLORIDA,                      )
                                       )
            Appellee.                  )
_____    )

Opinion filed September 6, 2017.

Appeal from the Circuit Court for
Hillsborough County; Kimberly K.
Fernandez, Judge.

Howard L. Dimmig, II, Public Defender,
and Timothy J. Ferreri, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Johnny T. Salgado,
Assistant Attorney General, Tampa,
for Appellee.


LUCAS, Judge.


        One man's trash is another man's treasure.  But sometimes it's just

another man's nuisance.  Such was apparently the case with the trash and overgrowth

that had accumulated around Carl Cosio's home.  While we might question whether that nuisance justified the prosecution of a felony charge against Mr. Cosio, on this record we must affirm his conviction and withhold of adjudication for violating sections 403.413(4) and (6)(c), Florida Statutes (2015).  We are concerned, however, about the State's misreading of the Florida Litter Law in the arguments it has maintained in this appeal.  We take this opportunity, then, to sift through what, under the statute, constitutes "dumping litter" and what does not.

I.

Over the years, Mr. Cosio had turned his yard into something of a repository for what one might charitably call unwanted miscellany—newspapers, bottles, cans, tubs, barrels, dolls, toys, pickup trucks—all spread out in scattered piles among a prolific overgrowth of trees, shrubs, plants, and wild vegetation.  In 2013, the cluttered condition of Mr. Cosio's property came to the attention of a City of Tampa code inspector, Bruce Lucas, who issued a citation to Mr. Cosio.  As the months went by, Mr. Lucas would return to the property frequently and speak with Mr. Cosio several times on the phone; but whatever Mr. Cosio's efforts may have been at clearing and cleaning the property, they were, in Mr. Lucas's estimation, insufficient to bring the property into compliance with the city code.

In April 2015, the City of Tampa initiated a code enforcement proceeding against Mr. Cosio concerning the condition of his property.  The code enforcement board determined that Mr. Cosio's yard was "a serious public safety and welfare threat" and imposed a deadline for him to bring his property into code compliance, as well as a daily fine if he failed to do so.  The deadline came and went, Mr. Lucas inspected the

property again and, once again, found it to be in an unacceptable condition. The code enforcement office then initiated an abatement of the property in October 2016—a three-day process during which city workers cut down the offending trees and brush on Mr. Cosio's yard, trimmed the overgrowth, and cleaned off all of the accumulated trash and debris, including the felled trees and brush, from the property. All of these materials were then collected together into piles and hauled away in dump trucks.

Shortly after the city's abatement of his property, Mr. Cosio was charged by information with one count of felony littering. He went to trial before a jury, was found guilty, and the circuit court withheld adjudication, sentenced him to five years of probation, and imposed restitution and a fine.

The principal dispute we will focus on concerns Mr. Cosio's argument in his posttrial motion for judgment of acquittal challenging the State's measurement of his litter. He argued below, and now on appeal, that not all the debris taken from his property was litter under the statute, and that the amount of litter (properly construed) that was removed was neither five hundred pounds in weight nor one hundred cubic feet in volume, and thus did not rise to the felonious threshold of littering under section 403.413(6)(c).[1] Mr. Cosio takes particular issue with the inclusion of the trees and overgrowth that the city cut down, which he maintains cannot be construed as his

---

[1]Subsection (6)(c) of the statute states that "[a]ny person who dumps litter in violation of subsection (4) in an amount exceeding 500 pounds in weight or 100 cubic feet in volume . . . is guilty of a felony of the third degree." In his motion, Mr. Cosio also attempted to refute that the condition of his property constituted a "nuisance," which is also a required element under section 403.413(4)(c). Although we note the majority of his neighbors who testified at his trial did not seem concerned or terribly bothered by Mr. Cosio's yard, the State presented sufficient evidence on that point such that Mr. Cosio's motion was properly denied.

"litter." The State responds that the "overgrown trees come under the definition of litter," but that, even without the overgrowth, there was still sufficient evidence of Mr. Cosio's littered personal effects to sustain the denial of his motion for judgment of acquittal.

Our record is rather light on this point. There was relatively little evidence presented as to any precise measure of Mr. Cosio's trash and debris. The code inspector, Mr. Lucas, testified that an entire line of cherry laurel trees was cut down during the abatement process and that a total of fifty tons of material was ultimately removed from the property. Mr. Lucas's estimate in that regard clearly included not only the piles of effects and personal property Mr. Cosio had scattered across his yard but also all the trees and vegetation that the city had clear cut as part of the abatement process. Later, however, Mr. Lucas clarified that the "accumulation of the junk, trash, and debris" was more than one hundred cubic feet. In addition to the code inspector's testimony, the State introduced several photographs through Mr. Lucas that depicted the state of Mr. Cosio's property prior to the abatement process.

II.

Mr. Cosio argues that the trial court erroneously denied his motion for a judgment of acquittal because the State improperly included "overgrowth"—that is, the trees and plants that the city had cut down during the abatement—in its calculation of the amount of litter that was collected from his property. We review the circuit court's denial of such a motion de novo. Starks v. State, 42 Fla. L. Weekly D665a, D668a (Fla. 2d DCA Mar. 22, 2017) (citing Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002)). Our resolution of this argument turns on how the Florida Litter Law is properly construed.

We begin with a review of its pertinent subsections and a brief observation about its application to property owners such as Mr. Cosio.

> Section 403.413(4) provides:
>
> **Dumping litter prohibited.—**Unless otherwise authorized by law or permit, it is unlawful for any person to dump litter in any manner or amount:
>
> (a) In or on any public highway, road, street, alley, or thoroughfare, including any portion of the right-of-way thereof, or any other public lands, except in containers or areas lawfully provided therefor. . . . ;
>
>      . . . .
>
> (c) In or on any private property, unless prior consent of the owner has been given and unless the dumping of such litter by such person will not cause a public nuisance or otherwise be in violation of any other state or local law, rule, or regulation.

"Dump" and "litter" are defined under subsections (2)(d) and (f), respectively, as follows:

> (d) "Dump" means to dump, throw, discard, place, deposit, or dispose of.
>
>      . . . .
>
> (f) "Litter" means any garbage; rubbish; trash; refuse; can; bottle; box; container; paper; tobacco product; tire; appliance; mechanical equipment or part; building or construction material; tool; machinery; wood; motor vehicle or motor vehicle part; vessel; aircraft; farm machinery or equipment; sludge from a waste treatment facility, water supply treatment plant, or air pollution control facility; or substance in any form resulting from domestic, industrial, commercial, mining, agricultural, or governmental operations.

Subsection (6) of section 403.413 establishes tiers of penalties for violation of the statute based upon the amount of litter the offender dumps. Pertinent here, subsection (6)(c) provides: "Any person who dumps litter in violation of subsection

- 5 -

(4) in an amount exceeding 500 pounds in weight or 100 cubic feet in volume . . . is guilty of a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083."

Finally, although it might seem, at first blush, somewhat counterintuitive, we agree with our sister court that dumping litter on one's own private property can, in certain circumstances, constitute a violation of the Florida Litter Law.  See State v. Davis, 838 So. 2d 696, 699 (Fla. 5th DCA 2003) (Monaco, J., concurring specially) (explaining that by reading subsection(4)(c) of the statute conjunctively, "if one is going to dump litter on one's own property, consent being presumed, that dumping must not cause a public nuisance or otherwise violate laws, rules or regulations.  If it does, it violates the statute").  As there is no serious dispute that Mr. Cosio's property had become a "public nuisance" and was in violation of a local rule or regulation,[2] our inquiry in this appeal becomes two-fold: first, can the State, as it argues on appeal, include the trees and overgrowth of vegetation that had taken root on Mr. Cosio's property—and that the city cleared away—in measuring the amount of dumped litter under the statute; and second, if it cannot, was there still sufficient evidence that Mr. Cosio had dumped five hundred pounds or one hundred cubic feet of litter on his property to withstand his motion for judgment of acquittal.

_____

[2]Mr. Cosio never challenged the City of Tampa Code Enforcement Board's prior ruling, which determined that his property was a public nuisance, a threat to public health, safety, or welfare, and in violation of sections 19-49 and 19-50 of the Tampa Code of Ordinances.  Those provisions prohibit "any accumulations of debris, rubbish, trash, garbage, refuse . . . [and] nuisance vegetation which exceeds a height of twelve (12) inches over the majority of the parcel," Tampa, Fla., Code of Ordinances ch. 19, § 49 (2015), as well as "excessive accumulations of untended growth of weeds, undergrowth or other dead or living plant life," Tampa, Fla., Code of Ordinances ch. 19, § 50 (2015).

A.

The first query is an issue of statutory construction. The State maintains that the various trees and brush the city was required to cut down to abate Mr. Cosio's property could be deemed "litter" for purposes of the statute. The State notes that subsection (4)(f) of the statute includes a broad and varied swath of materials that could potentially constitute litter under the Florida Litter Law. And, as the State points out, included in that list, we find "building or construction material," "wood," and substances resulting from "agricultural operations." Under the State's reading of the statute, since the trees and brush the City cut down were comprised of wood, and wood can be harvested in agricultural operations or used as a building or construction material, it follows that all of this felled foliage was litter. In our view, although the State's argument may hold a whiff of logic, it is not a viable interpretation of the Florida Litter Law.

The legislature crafted subsection (4)(f) to define litter by referencing a list of items with progressing particularity. The first four items of the list—"garbage," "rubbish," "trash," and "refuse"—are fairly generalized descriptive concepts, but the remaining items that follow share a common feature: they can all, in some way, be viewed as potential examples or variants of discarded "garbage," "rubbish," "trash," or "refuse" of one sort or another. As such, we construe "wood," "building or construction material" and "substance . . . resulting from . . . [an] agricultural operation" in the light of those prefatory examples in the subsection—that is, these latter terms illustrate specific kinds of garbage, rubbish, trash, or refuse. See Stratton v. Sarasota County, 983 So. 2d 51, 56 (Fla. 2d DCA 2008) ("[U]nder the doctrine of *noscitur a sociis* (a word is known by the company it keeps), one examines the other words used within a string of

concepts to derive the legislature's overall intent." (quoting <u>Nehme v. Smithkline Beecham Clinical Labs., Inc.</u>, 863 So. 2d 201, 205 (Fla. 2003))); <u>see also</u> <u>Yates v. United States</u>, 135 S.Ct. 1074, 1085-86 (2015) (holding that an illegally caught grouper could not be deemed a "tangible object" under the Sarbanes-Oxley Act of 2002 because, applying noscitur a sociis, "[t]he words immediately surrounding 'tangible object' in § 1519—'falsifies, or makes a false entry in any record [or] document'—also cabin the contextual meaning of that term" (second alteration in original)); <u>Gustafson v. Alloyd Co., Inc.</u>, 513 U.S. 561, 575 (1995) ("[A] word is known by the company it keeps (the doctrine of *noscitur a sociis*).  This rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.' " (quoting <u>Jarecki v. G.D. Searle & Co.</u>, 367 U.S. 303, 307 (1961))).

   With that principle in mind, it defies any reasonable understanding of what could plausibly be characterized as "litter," or "garbage," or "trash," or "rubbish" to maintain, as the State does here, that live, verdant plant life and forestry falls within the ambit of any of those words.[3]  A living tree is not trash, at least under the Florida Litter

---

[3]<u>Cf.</u> *Litter*, <u>Black's Law Dictionary</u> (10th ed. 2014) ("Wastepaper, cans, and other refuse that people have discarded and left on the ground in a public place."); *Garbage*, <u>Ballentine's Law Dictionary</u> (2010) ("The accumulation as refuse of animal, fruit, or vegetable matter, liquid or otherwise, that attends the preparation, use, cooking, dealing in, or storing of meat, fish, fowl, fruit, or vegetables; any worthless or offensive matter."); Stephen Michael Sheppard, <u>Bouvier Law Dictionary</u> (2012) (defining trash as: "Dry solid waste material.  Trash is refuse, garbage, the dry solid waste cast off by individuals and entities to be destroyed, disposed of, or, potentially, recycled"); *Rubbish*, <u>Ballentine's Law Dictionary</u> (2010) ("Refuse.  Waste materials collected by a municipality."); <u>New Oxford American Dictionary</u> 1842 (3d ed. 2010) (defining trash as "discarded matter; refuse"); <u>id.</u> at 1525 (defining rubbish as "waste material" and "material that is considered unimportant or valueless").

Law.  To broaden the meaning of litter to include growing things that are rooted in the earth would imbue more than an "unintended breadth" of definition into the statute's language, Jarecki, 367 U.S. at 307—it would foist an outright distortion on the common meaning of "garbage," "rubbish," "trash," or "refuse."

Nor under these circumstances does the felled state of the trees and brush on Mr. Cosio's yard transubstantiate their material into litter for purposes of the statute.  To be found in violation of section 403.413, the State had to prove that Mr. Cosio "dumped" the offending material.  To "dump" means to "dump, throw, discard, place, deposit or dispose of" proscribed litter.  § 403.413(4)(d).  Mr. Cosio did none of these things with respect to the trees and overgrowth on his property.  A city employee or contractor was responsible for clear cutting Mr. Cosio's yard of its overgrowth.  Whatever else can be said of Mr. Cosio's attention (or inattention) to the overgrowth on his yard, it was not a problem that could be characterized as stemming from his "dumping" plant life across his property.

B.

Nevertheless, we are satisfied that the State presented admissible evidence from which a jury could have concluded that Mr. Cosio had dumped a sufficient amount of litter—of the statutorily proscribed kind—to support his conviction for this offense.  See Pagan, 830 So. 2d at 803 ("If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." (citing Banks v. State, 732 So. 2d 1065 (Fla. 1999))); Nicholas v. State, 47 So. 3d 297, 300 (Fla. 2d DCA 2010) ("The trial court should grant a judgment of

acquittal if the State fails to present legally sufficient evidence to establish each element of the crime charged." (citing State v. Odom, 862 So. 2d 56, 59 (Fla. 2d DCA 2003))). Mr. Lucas had become thoroughly familiar with Mr. Cosio's property by the time of the trial. Throughout his testimony, he consistently referred to the trees and brush on Mr. Cosio's yard as "overgrowth." When he was asked whether the accumulated trash on Mr. Cosio's yard exceeded one hundred cubic yards, he replied (without referencing overgrowth, trees, or vegetation) that it did. Furthermore, the jury was provided several photographs that offered various views of Mr. Cosio's yard and his accumulations prior to the City's abatement. These pictures depict an enormous quantity of accumulated personal effects—all of which could easily be deemed "garbage," "rubbish," "trash," or "refuse"—scattered across Mr. Cosio's yard. Collectively, when combined with Mr. Lucas's testimony, this evidence supported the trial court's denial of Mr. Cosio's motion for judgment of acquittal.

Although the State's pursuit of a felony case through a jury trial against an elderly gentleman who hoarded junk on his overgrown yard strikes us as a rather questionable expenditure of criminal justice resources,[4] that is not a basis upon which we can disturb the trial court's ruling, and so we affirm the judgment below.

Affirmed.

---

[4]All the more so given the broad civil remedies the city had at its disposal—a property lien for abatement, declaratory or injunctive relief—with which it could have obtained Mr. Cosio's compliance with the city's code. See Tampa, Fla., Code of Ordinances ch. 19, § 7(d) (2015) ("If the abatement costs have not been appealed or paid within thirty (30) calendar days of billing, the city will, by resolution, impose an abatement assessment lien, and upon recordation in the official records of Hillsborough County, Florida will establish a lien against the subject real property."); Rudge v. City of Stuart, 65 So. 3d 645 (Fla. 4th DCA 2011) (recognizing city's authority to enforce nuisance abatement ordinance through injunctive relief).

SILBERMAN and CRENSHAW, JJ., Concur.